IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WALGREEN CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-123 (GMS) |
| | ) | CONSOLIDATED |
| CVS PHARMACY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS THAT
WALGREENS' PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. § 101**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)

OF COUNSEL:

*For Defendant CVS Pharmacy, Inc.:*

Adam L. Perlman
David M. Krinsky
Cadence A. Mertz
Joelle S. Perry
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant CVS Pharmacy, Inc.,
Rite Aid Corporation and Rite Aid Hdqtrs.
Corp.*

OF COUNSEL:

Jeremy A. Younkin
Claire Laporte
Nathan G. Ingham
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

SEITZ ROSS ARONSTAM & MORITZ LLP
Collins J. Seitz, Jr. (#2237)
Benjamin J. Schladweiler (#4601)
100 South West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzross.com

*Attorneys for ShopKo Stores Operating Co.
LLC and mscripts, LLC*

October 31, 2014

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF THE ARGUMENT ......................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

WALGREENS' CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 ....................................... 5

    A.    The '530 Patent Claims the Abstract Idea of Refilling a
        Prescription by Providing the Prescription Number ............................................... 6

        1.    Commercial Transactions Are Routinely Held to Be
                Abstract Ideas ............................................................................................... 6

        2.    The Claims of the '530 Patent Are Directed to Abstract
                Ideas .............................................................................................................. 10

    B.    The '530 Patent Does Not Disclose an "Inventive Concept"
        Sufficient to Render the Claimed Abstract Idea Patent-Eligible .......................... 12

        1.    The Claims of the '530 Patent Require Nothing More Than
                Conventional, Well-Known Technology ................................................... 13

        2.    The Use of a Smartphone Camera Does Not Save the
                Claims ........................................................................................................... 15

        3.    The Steps of Walgreens' Method Do Not "Transform" the
                Claims into "Significantly More" Than the Abstract Idea ....................... 17

CONCLUSION .............................................................................................................................. 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)........................................................................16

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ...........................................................................*passim*

*Allstate Prop. & Cas. Ins. Co. v. Squires*,
    667 F.3d 388 (3d Cir. 2012) .................................................................................4

*Bilski v. Kappos*,
    561 U.S. 593, 130 S. Ct. 3218 (2010) ....................................................*passim*

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)..............................................................*passim*

*buySAFE, Inc. v. Google, Inc.*,
    964 F. Supp. 2d 331 (D. Del. 2013) ........................................................*passim*

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
    --- F. Supp. 2d ----, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) ...................4, 7, 9

*CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*,
    --- F. Supp. 2d ----, 2014 WL 4922349 (C.D. Cal. Aug. 29, 2014).......................7

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*,
    C.A. No. 12-205 (RGA), 2014 WL 3542055 (D. Del. July 16, 2014)..................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    Nos. 12-2501 (MAS) (JTB), 12-6960, 2013 WL 3964909 (D.N.J. July 31,
    2013)................................................................................................................16

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)..................................................................10, 16

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012).................................................................6-7, 12

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
    No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014)....................8-9

*Gametek LLC v. Zynga, Inc.*,
    Nos. CV 13-2546 RS, CV-13-3089-RS, CV-13-3493-RS, 2014 WL 1665090
    (N.D. Cal. Apr. 25, 2014)................................................................................17

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) .......................................................................................................... 13

*In re Smartphone Geolocation Data Application*,
    977 F. Supp. 2d 129 (E.D.N.Y. 2013) ............................................................................. 16

*Ion Wave Tech., Inc. v. SciQuest, Inc.*,
    C.A. No. 12-1341 (RGA), 2014 WL 788792 (D. Del. Feb. 26, 2014) ................................. 4

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*,
    --- F. Supp. 2d ----, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (Bryson, J.) ................ 8, 11

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    984 F. Supp. 2d 189 (S.D.N.Y. 2013) ................................................................................. 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ............................................................................................. *passim*

*Parker v. Flook*,
    437 U.S. 584 (1978) ....................................................................................................... 12

*SmartGene, Inc. v. Advanced Bio. Labs., SA*,
    555 F. App'x. 950 (Fed. Cir. Jan. 24, 2014) .................................................................... 15

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
    C.A. No. 13-1771 (RGA), 2014 WL 4382446 (D. Del. Sept. 3, 2014) ........................... 7, 11

*Walker Digital, LLC v. Google, Inc.*,
    C.A. No. 11-318 (LPS), 2014 WL 4365245 (D. Del. Sept. 3, 2014) ........................... 7, 9, 11

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573, slip op. (C.D. Cal. Oct. 28, 2014) .................................................... 15

**Rules and Statutes**

35 U.S.C. § 101 ........................................................................................................... *passim*

Fed. R. Civ. P. 12(c) .............................................................................................................. 4

Walgreen Co. ("Walgreens") asserts in this case that Defendants CVS Pharmacy, Inc., Rite Aid Corp., Rite Aid Hdqtrs. Corp., mscripts, LLC, and ShopKo Stores Operating Co., LLC, infringe the claims of U.S. Patent No. 8,626,530 ("the '530 patent"). As the Supreme Court recently made clear, claims such as those of the '530 patent recite subject matter that is not eligible for patenting under 35 U.S.C. § 101. Accordingly, the claims of the '530 patent are invalid, and judgment on the pleadings should be entered in favor of the Defendants.

## SUMMARY OF THE ARGUMENT

Since the Supreme Court decided *Alice Corp. v. CLS Bank International* in June 2014, a tidal wave of Federal Circuit and district court decisions have invalidated patents directed to the mere application of well-known computer technology to methods of doing business. These decisions have consistently held business methods, such as those at issue in this case, to be "abstract ideas," which are not eligible for patenting under 35 U.S.C. § 101 under long-standing Supreme Court and Federal Circuit precedent. And as the Supreme Court emphasized, those methods of performing commercial transactions are not brought within the ambit of Section 101 simply because they are implemented using computer technology. Rather, where a patent is directed to an abstract idea, it is only patent-eligible—and thus only valid—if its claims contain additional elements that are so "significant[]" that they "transform the nature of the claim" into a patent-eligible invention rather than an abstract idea. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297–98 (2012)). Routine application of already-known computer technology to a common commercial transaction will not suffice.

The patent at issue in this consolidated action is no different from those that have fallen in the wake of *Alice*. Walgreens' '530 patent is directed to smartphone apps that capture a barcode containing a pharmaceutical prescription number and then provide that number to a

server associated with the pharmacy so the pharmacy can refill the prescription.  Am. Compl., Ex. A ('530 patent), D.I. 31-1.  The claims take several forms—methods, computer systems, and computer-readable storage media (containing "computer-executable instructions" for the apps)— but all of them, at bottom, are directed to the same idea:  providing a prescription number to a pharmacy and asking the pharmacy to refill the prescription.  *See* '530 patent, col. 1 ll. 34–38 (describing the refilling of prescriptions by calling or faxing the pharmacy).  To that abstract idea, Walgreens has added nothing more than the use of a mobile computing device (*e.g.*, a smartphone) with a camera to capture a barcode containing the prescription number and send that number to the pharmacy over the Internet.  That application of computer technology is nothing more than routine.  Walgreens does not purport to have invented barcodes, the use of barcodes to encode prescription numbers, the use of a mobile device to capture a barcode, or any of the hardware or software needed to capture or interpret a barcode.  Indeed, well before the patent's August 27, 2010 priority date, other companies invented and brought to market mobile devices with cameras (such as Apple's blockbuster iPhone) that could capture and interpret barcodes and thereby extract a number from them.  The '530 patent merely takes those off-the-shelf technologies and uses them to perform an everyday transaction.

Under 35 U.S.C. § 101, as interpreted by the Supreme Court in *Alice*, such patent claims are drawn to ineligible subject matter.  Each and every claim of the '530 patent is drawn to an abstract idea and is therefore invalid under *Alice*.

## STATEMENT OF FACTS

This consolidated case arises from three separate actions that Walgreens filed, accusing CVS Pharmacy, Inc., Rite Aid Corp., Rite Aid Hdqtrs. Corp., mscripts, LLC, and ShopKo Stores Operating Co., LLC, of infringing the '530 patent.  CVS, Rite Aid, and Shopko are retail stores

that have made available allegedly infringing prescription refill apps; mscripts is a developer of apps for pharmacies, including Shopko.

The '530 patent issued on January 7, 2014, and claims priority to an application filed on August 27, 2010. It has three related independent claims. Claim 1 is directed to a method of refilling a pharmacy prescription by using the mobile device to capture a barcode containing a prescription number and sending that number to the pharmacy. It reads:

> 1. A method for allowing a customer to refill a prescription with an application executing on a web enabled mobile device, where the web enabled mobile device includes a processor, a memory coupled to the processor and a camera configured to capture a barcode image that has at least a prescription number encoded therein, the method comprising:
> causing the processor to display an interface in the application executing on the web enabled mobile device, the interface for selection of a prescription refill option;
> receiving an input at the processor from the customer indicating, via the application, a selection of the prescription refill option;
> the application causing the processor to activate the web enabled mobile device's camera for scanning of a barcode;
> the application causing automatically or upon a user input, the camera to capture an image, displayed in the application, of the barcode indicating at least a prescription number, the prescription number corresponding to a prescription medication and a patient;
> the application causing the processor to transmit from the application, over a network, to a server, data indicative of at least the prescription number so that the server can automatically validate the prescription number by verifying that the prescription number exists in a database of prescription numbers corresponding to a previously filled prescription medication;
> receiving information at the web enabled mobile device, over the network, at least a portion of which is to be displayed in an order review page of the application executing on the web enabled mobile device;
> causing the processor to generate a display in the application including the at least the portion of received information in an order review page, wherein the information includes the prescription number and a pharmacy location where the prescription medication in the prescription will be filled;
> wherein the information to be displayed in the order review page includes the pharmacy location and an option to change the pharmacy location;
> transmitting from the web enabled mobile device, in response to an action by the customer viewing the displayed order review page, to the server and via the network, a confirmation to refill the prescription.

'530 patent, claim 1. The other two independent claims (claims 10 and 14) embody similar methods in the form of computer storage media and systems. Specifically, claim 10 is directed to a "computer-readable storage medium having computer-executable instructions . . . for allow[ing] a user access to a refill by scan prescription system," and claim 14 is a "system for receiving a refill order for one or more prescription medications," with both claims comprised of similar steps to those in claim 1. '530 patent, claims 1, 10, 14. The dependent claims, in turn, offer minor variations on the basic elements of the method and system, such as providing a display to assist the customer in positioning the barcode for capture (claim 5), and supplying a default pick-up time for the order (claim 3). All the claims, however, are directed to the same general method of refilling prescriptions by "captur[ing]" a barcode containing a prescription number and "transmitting" that number to the pharmacy.

## <u>ARGUMENT</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding such a motion, "[t]he court must accept the factual allegations in the complaint and take them in the light most favorable to the plaintiff." *Ion Wave Tech., Inc. v. SciQuest, Inc.*, C.A. No. 12-1341 (RGA), 2014 WL 788792, at *1 (D. Del. Feb. 26, 2014). Judgment on the pleadings is appropriate if the movant establishes that "there are no issues of material fact, and that [it] is entitled to judgment as a matter of law." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012) (citation omitted). These standards are met here; the question of whether patent claims are drawn to ineligible subject matter is an issue of law appropriate for resolution upon a motion for judgment on the pleadings, and as will be discussed below, every claim of the '530 patent is ineligible under 35 U.S.C. § 101. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 964 F. Supp. 2d 331, 333 (D. Del. 2013); *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, ---

F. Supp. 2d ----, 2014 WL 923280, at *2, 8 (E.D. Tex. Jan. 21, 2014); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 191 (S.D.N.Y. 2013).

## WALGREENS' CLAIMS ARE INVALID UNDER 35 U.S.C. § 101

Title 35, Section 101 of the United States Code provides that four categories of inventions are potentially eligible for patent protection: "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3225 (2010). Despite the apparent breadth of patent-eligible subject matter, the Supreme Court has recognized three significant exceptions to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Bilski*, 130 S. Ct. at 3225 (citation omitted). That is, even if a claim nominally falls within one of the categories of subject matter listed in Section 101, it is not eligible for a patent if it also falls within one of the judicially-recognized exceptions, such as, as is pertinent here, the exception for abstract ideas. That exception includes, among other things, "method[s] of organizing human activity," as well as "longstanding commercial practice[s]." *Alice*, 134 S. Ct. at 2356. The Supreme Court and the Federal Circuit have emphasized that the "abstract ideas" exception is an important limitation on the availability of patents covering computerized inventions. *See id.* at 2360; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014).

In *Alice*, the Supreme Court reaffirmed the two-part test first enunciated in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), for determining whether, despite including limitations involving particular technologies, a patent claim is nevertheless directed to an abstract idea and is thus unpatentable. Under this test—referred to herein as the "*Alice/Mayo* test"—the Court must first determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355. If they

are, the Court must then examine whether the additional elements of each claim "transform the nature of the claim" into a patent-eligible application.  *Id.* (quoting *Mayo*, 132 S. Ct. at 1297–98).

Under this two-step analysis, Walgreens' patent claims are directed to ineligible subject matter.  The '530 patent claims a simple transaction of the type that courts have routinely held to be abstract ideas: a customer providing a prescription number to a pharmacy to request a refill of that prescription.  To that idea, it adds conventional technology—a smartphone with barcode-capture software—that predated Walgreens' purported invention.  Such conventional technology is insufficient to transform the claims into anything more than an abstract idea that cannot be patented.

### A. The '530 Patent Claims the Abstract Idea of Refilling a Prescription by Providing the Prescription Number

#### 1. Commercial Transactions Are Routinely Held to Be Abstract Ideas

Under the first step of the *Alice/Mayo* test, courts determine whether the patent claims at issue are directed to an abstract idea.  *See, e.g.*, *buySAFE*, 765 F.3d at 1353–54; *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).  The Supreme Court, the Federal Circuit, and the district courts have developed an overwhelming consensus that claims directed to the performance of commercial or financial transactions are directed to abstract ideas:

- In *Bilski*, the Supreme Court held that a method of initiating a series of transactions in the energy markets to protect against risk was an abstract idea and thus invalid under 35 U.S.C. § 101.  130 S. Ct. at 3223–24, 3231.

- In *Alice*, the Supreme Court similarly invalidated, as directed to an abstract idea, claims directed to a computerized methods, systems, and media for exchanging obligations, such as settling currency trades.  134 S. Ct. at 2352, 2356.

- In *Dealertrack*, the Federal Circuit held that a patent claiming a computer-aided method for processing a consumer credit application was drawn to the abstract idea of processing information through a clearinghouse.  674 F.3d at 1331, 1333.

- In *buySAFE*, the Federal Circuit invalidated, as an abstract idea, claims to computer-aided methods and computer media for guaranteeing the safety of Internet transactions by automatically intermediating among a buyer, a seller, and a third party who insures the transaction.  765 F.3d at 1352, 1355.

- In this District, Judge Andrews recently granted a motion to dismiss filed by the accused infringer in a case involving systems and methods for using computer systems to "upsell" consumers, *i.e.*, to encourage online purchasers to buy additional goods.  *Tuxis Techs., LLC v. Amazon.com, Inc.*, C.A. No. 13-1771 (RGA), 2014 WL 4382446 (D. Del. Sept. 3, 2014).

- Judge Stark also recently granted summary judgment holding invalid, as an abstract idea, a patent on computerized systems for facilitating "headhunting" by controlling the release of information in the context of employee hiring.  *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318 (LPS), 2014 WL 4365245 (D. Del. Sept. 3, 2014).

- In *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, --- F. Supp. 2d ----, 2014 WL 923280, *1 (E.D. Tex. Jan. 21, 2014), the court found a patent claiming a computer-based system to "facilitate[] sales from an inventory of the selling entity" involved the abstract idea of inventory-based selling.

- In *CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*, --- F. Supp. 2d ----, 2014 WL 4922349 (C.D. Cal. Aug. 29, 2014), another district court held invalid,

7

as an abstract idea, claims to systems and methods for providing a line of credit to a borrower that links a home mortgage to a checking account.

- Likewise, in *Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, --- F. Supp. 2d ----, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (Bryson, J.), a district court held invalid, as an abstract idea, claims to computerized systems for exchanging one type of promotional credit (such as airline frequent flyer miles) for another.

- As a final, non-exhaustive example, yet another district court held invalid as an abstract idea patent claims to computerized methods and systems for automated saving or automated charitable giving by automatically rounding up banking transactions to the nearest whole dollar and redirecting the rounded cents. *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014).

The common thread in this line of cases is that when a patent claim is directed to the use of computer technology to "organiz[e] human activity" or perform a commercial or financial transaction, as opposed to "improv[ing] the functioning of the computer" or "other technology," the claim as a whole is an abstract idea satisfying step one of the *Alice/Mayo* test. *Alice*, 134 S. Ct. at 2356, 2359–60. Claims involving business methods, such as obtaining credit, ordering an item from a store's inventory, or marketing goods to customers are regularly held to meet these standards and are thus deemed to be abstract ideas, and claims directed to ordering prescription refills are no different. *See, e.g.*, *buySAFE*, 765 F.3d at 1353–54. Also held to be abstract ideas are inventions that, even if they are not "commercial transactions" in the strictest sense, *see id.* at 1355, center around "human interaction[s]," "exchanging information," or the

communication of requests or instructions that could be performed without computer technology (a category that would include the communication of a prescription refill order even if it were not part of a business transaction), *see, e.g.*, *Walker Digital*, 2014 WL 4365245, at *6, 9.  An invention is particularly likely to be deemed an abstract idea if the underlying concepts involved were well-known before the patent was filed.  *E.g.*, *buySAFE*, 765 F.3d at 1352, 1355; *see also* *Alice*, 134 S. Ct. at 2356.

These recent Section 101 decisions also make clear that identifying an abstract idea in a patent claim requires a holistic view of the idea underlying the claimed invention.  Thus, for example, the Supreme Court characterized the claims in *Alice* as being directed to the abstract concept of "intermediated settlement," even though the claims were drawn to methods (and computer systems and storage media) for performing such transactions in a particular way— using a computer system to maintain so-called "shadow accounts" that mirrored the parties' bank accounts at another institution.  *Alice*, 134 S. Ct. at 2359–60.  Similarly, the Federal Circuit in *buySAFE* held that the claims met step one of the *Alice/Mayo* inquiry and were directed to the abstract idea of a third-party "performance guaranty" even though the claims in question required a particular sequence of communications among computer applications over a computer network.  *buySAFE*, 765 F.3d at 1352, 1354–55; *see also, e.g.*, *Every Penny Counts*, 2014 WL 4540319, at *1 (characterizing method of automated savings by rounding credit card purchases to nearest dollar and transferring difference to a separate account as directed to the idea of "small saving on many occasions accumulat[ing] into a large saving"); *Clear with Computers*, 2014 WL 923280, at *4 (finding method of providing customization options from products in stock in lieu of custom orders directed to the idea of "inventory-based selling").  Thus, details such as the particular computer components or communication steps involved in performing a claimed

method may or may not transform the claim into something patent-eligible under step two of the *Alice/Mayo* analysis, but they do not affect whether as an initial matter the claim is directed to an abstract idea under step one of the *Alice/Mayo* test.[1]

### 2.      The Claims of the '530 Patent Are Directed to Abstract Ideas

Under this case law, there can be little question that Walgreens' claims are directed to abstract ideas.  Each of the independent claims of the patent involves a substantially similar sequence of steps for refilling prescriptions:  A smartphone app "display[s] an interface" that allows a user to "select[] . . . a prescription refill option"; uses the smartphone's camera to capture a prescription barcode; sends the prescription number encoded in that barcode to a server, where it is validated; and allows the user to review the order and confirm the completed order.  *E.g.*, '530 patent, claim 1.  The dependent claims add various minor refinements to this same general method, but do not change the overall concept underlying the claims.  *See id.*, claims 2–9, 11–13, 15–19.  Accordingly, all of the claims are properly analyzed as being directed to the same idea for purposes of Section 101:  ordering a prescription refill by prescription number.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011) (holding that the relevant analysis for Section 101 is not the "statutory category . . . a claim's language is crafted to literally invoke," but rather "the underlying invention").

The underlying idea of ordering prescription refills by providing the prescription number to a pharmacy is an "abstract idea" under step one of the *Alice/Mayo* test.  This basic concept is a

---

[1]    For this reason, as the Federal Circuit recognized in *buySAFE*, the widespread identification of business methods as "abstract ideas" at step one of the *Alice/Mayo* test does not run afoul of the Supreme Court's admonition in *Bilski* that there is no *per se* exception to patent-eligibility for business methods.  *buySAFE*, 765 F.3d at 1354.  "If enough extra is included in a claim" for the claim to survive step two of the *Alice/Mayo* test, the claim "passes muster under section 101 even if it amounts to a 'business method'" that is "abstract" under step one.  *Id.*  Here, as will be discussed below in Section B, there is not "enough extra" in the claims of the '530 patent.

simple, well-known commercial interaction that could be performed by a human without using any particular technology. *See, e.g.*, *Tuxis Techs.*, 2014 WL 4382446, at *5 ("[A] computer is not an integral part of the claim here. A human being can generate an upsell recommendation . . . although perhaps not with the efficiency or speed of a computer."); *Walker Digital*, 2014 WL 4365245, at *6 ("[T]he additional 'steps' of the claims of the '270 patent are merely a series of mental steps that people, aware of each step, can and regularly do perform in their heads." (citation omitted)). Indeed, the same basic method, absent technological dressing, can be (and is) used to order prescription refills over the telephone. Pharmacy customers have been doing this for decades, as the '530 patent itself acknowledges. *See* '530 patent, col. 1 ll. 34–38. They have also long been able to order prescriptions via a web page on an ordinary desktop or laptop computer (indeed, using virtually the same steps as in the claims of the '530 patent, only typing the prescription number instead of scanning it). *See id.*, col. 1 ll. 38–41. Such "longstanding commercial practices" are abstract ideas not eligible for patent protection. *See, e.g.*, *Alice*, 134 S. Ct. at 2357–58 (intermediated settlement); *Loyalty Conversion Sys.*, 2014 WL 4364848, at *6–7 (currency exchange); *Tuxis Techs.*, 2014 WL 4382446, at *3 (upselling).

Indeed, more generally, the idea embodied in Walgreens' claims is just one example of a "fundamental economic practice" akin to those held to be abstract in *Bilski* and *Alice*: ordering goods by providing the item number. *See Bilski*, 130 S. Ct. at 3233–34; *Alice*, 134 S. Ct. at 2356. That idea has long been encountered in contexts that range from selecting an item in the Sears catalog to choosing the number 3 combination at Burger King, and clearly constitutes an "abstract idea" under step one of the *Alice/Mayo* test. It is not relevant to the Section 101 analysis that Walgreens' claims are limited to the specific context of refilling prescriptions. "[L]imiting an abstract idea to one field of use . . . d[oes] not make the concept patentable."

*Bilski*, 130 S. Ct. at 3231.  Thus, for example, the Supreme Court in *Parker v. Flook*, 437 U.S. 584 (1978), rejected the argument that a method for performing calculations relating to the presence of abnormal conditions in a chemical process was rendered patent-eligible by limiting the claims to the context of catalytic conversion of hydrocarbons in the petrochemical industry, as opposed to all chemical processes.  *Id.* at 585, 593–94.  Likewise, in *Bilski*, the Court rejected the patentee's assertion that limiting the claimed method of hedging to hedging in energy markets confers patent eligibility.  130 S. Ct. at 3231.  In *Alice*, the claims that were limited to exchanges in the currency markets were invalidated along with broader claims that were not limited to a particular purpose or transaction type.  134 S. Ct. at 2355–57.  And in *Dealertrack*, the patent was specifically limited to the use of a data clearinghouse in the context of credit or loan applications, but this did not render the claims patent-eligible.  674 F.3d at 1331.  Walgreens' patent is similarly deficient; the fact that the '530 patent is limited to the context of ordering a prescription refill does not make it any different for Section 101 purposes from a broad claim to a method for ordering consumer goods by item number.

In short, the claims of the '530 patent are directed to an abstract idea under step one of the *Alice/Mayo* test, and "do not push or even test the boundaries" of the Section 101 precedents. *buySAFE*, 765 F.3d at 1354–55.

**B.      The '530 Patent Does Not Disclose an "Inventive Concept" Sufficient to Render the Claimed Abstract Idea Patent-Eligible**

Once it has been established that a patent claim involves an "abstract idea," the Section 101 inquiry turns to the question of whether the claims also involve an "inventive concept" sufficient to render the abstract idea patent-eligible.  That is, if a claim is directed to an abstract idea under the first step of the *Alice/Mayo* inquiry, it is only patent-eligible if it also contains an element or combination of elements "sufficient to ensure that the patent in practice amounts to

*significantly more* than a patent upon the [abstract idea] itself." *Mayo*, 132 S. Ct. at 1294 (emphasis added); *accord Alice*, 134 S. Ct. at 2355. If, in contrast, a claim involving an abstract idea merely combines the idea with "well-understood, routine, conventional activity," it will be ineligible for patent protection. *Mayo*, 132 S. Ct. at 1298. Applying these concepts to computer technology, the Supreme Court held in *Alice* that implementing an abstract idea on "existing computers" does not "supply the necessary inventive concept" and will not render patent-eligible a claim involving an abstract idea. *Alice*, 134 S. Ct. at 2357 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). Nor, indeed, will the mere recitation of *any* known technology make such a claim patent-eligible if the claim does not "purport to improve the functioning of" or "effect an improvement in" some "technology or technical field." *Id.* at 2359.

Walgreens' claims involve nothing more than an abstract idea combined with the recitation of known technology. Under *Alice*, they accordingly lack any element or combination of elements that provide the required "significantly more" than the abstract idea itself. The claims are therefore not patent-eligible.

### 1.   The Claims of the '530 Patent Require Nothing More Than Conventional, Well-Known Technology

Walgreens' claims recite various pieces of electronic hardware that are needed to carry out the recited methods, such as a mobile device. None of that hardware, however, involves any new technology or "amounts to significantly more" than the abstract idea embodied in its claims. *Mayo*, 132 S. Ct. at 1294. Walgreens does not claim to have developed any improvement in barcode technology, scanning technology, camera technology, or smartphone technology, nor even to have put those concepts together for the first time. *See* '530 patent, col. 4 ll. 1–2, col. 7 ll. 38–43, col. 18 ll. 33–39. The claims require, for example, the use of a "mobile device" with a "camera" to capture the prescription barcode, *e.g.*, '530 patent, claim 1, but Walgreens does not

purport to have invented such devices.  *See* '530 patent, col. 17 ll. 36–41 (describing "web-enabled devices" and "mobile platform[s]" "developed by Google Inc., Palm, Inc. (now Hewlett-Packard Company), and Apple").  Indeed, the claims are not even limited to particular "mobile devices"; the specification describes devices as diverse as "a smart-phone, a web-enabled cell phone, [or] a tablet computer"—none of which it purports to disclose for the first time or to be themselves something that Walgreens invented.  '530 patent, col. 7 ll. 38–42; *see also id.*, col. 4 ll. 1–2.  The '530 patent also states that the barcodes of the invention may be "conventional," and may be decoded by *any* device, not just the mobile device.  *Id.*, col. 18 ll. 31–49 (noting that the barcode may be sent to a remote server to be decoded).  Walgreens' application of off-the-shelf mobile devices and barcode technology to the abstract idea of ordering a prescription refill by prescription number cannot give rise to patent-eligibility.  *See Alice*, 134 S. Ct. at 2358; *see also buySAFE*, 765 F.3d at 1352 (underwriting surety bonds via "computer application program running on a computer of a safe transaction service provider" insufficient).

There is also no novel computer hardware situated at the pharmacy's end of the refill process.  The invention requires only a generic "server" associated with the pharmacy, and able to communicate with the web-enabled device via a "digital network" such as the Internet. '530 patent, col. 4 ll. 5–29, 42–45.  "That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."  *buySAFE*, 765 F.3d at 1355.  As the Supreme Court held in *Alice*, a claim that uses such generic, well-known devices and does not purport to improve their functioning amounts to "nothing significantly more than an instruction to apply the abstract idea" using "generic" computer technology.  *Alice*, 134 S. Ct. at 2359–60 (citation omitted).  That is "not enough to transform an abstract idea into a patent-eligible invention."  *Id.* at 2360 (citation omitted).  Indeed, the claims held invalid in *Alice*

14

involved the use of similar server hardware, including a "data storage unit" and a "communications controller" (*i.e.*, a device for communicating over a network such as the Internet). *Id.*; *see also buySAFE*, 765 F.3d at 1352, 1355 ("computer application program running on a computer of a safe transaction service provider" "adds no inventive concept"); *SmartGene, Inc. v. Advanced Bio. Labs., SA*, 555 F. App'x. 950, 954 (Fed. Cir. Jan. 24, 2014) (claims reciting "'a computing device' having routine input, memory, look-up, comparison, and output capabilities" held unpatentable); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, C.A. No. 12-205 (RGA), 2014 WL 3542055, at *6 (D. Del. July 16, 2014) (limiting implementation of method to a "telephony network" insufficient to confer patentability).  And as the Supreme Court recognized, such devices did not render the claim patent-eligible, because "[n]early every computer" includes such components and, as a result, "none of the hardware . . . offers a meaningful limitation" on the abstract idea.  *Alice*, 134 S. Ct. at 2360 (citation omitted).

## 2.    The Use of a Smartphone Camera Does Not Save the Claims

Walgreens may attempt to respond that this case is distinguished from the run-of-the-mill Section 101 cases because it involves not just generic computer technology, but a mobile device with a camera—a particular device that does more than compute.  Such an argument would be unavailing, however.  As an initial matter, *Alice* and *Mayo* make it clear that a computer is only one example of a technology that may be added to a claim directed to an abstract idea but that will fail to supply the "inventive concept" needed to achieve patent-eligibility.  *Alice*, 134 S. Ct. at 2357; *Mayo*, 132 S. Ct. at 1298.  A claim is not rendered patent-eligible by adding any "well-understood, routine, [or] conventional activity," *Mayo*, 132 S. Ct. at 1294, including the use of other well-known technologies.  As discussed above, the smartphone, the smartphone's camera, and the relevant barcode technology are not in any way novel and thus cannot confer patent eligibility.  *See Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573, slip op. at 21 (C.D. Cal.

Oct. 28, 2014) (finding requirement that a "component," such as a "bar code," that "trigger[s] a camera to take a photograph" to be a "recitation[] of generic technology [] insufficient to confer patent eligibility").  And in any event, a smartphone *is* a computer—the fact that it is in mobile form, can communicate wirelessly, and has a touchscreen instead of a keyboard does not make it any less of a computer.  *See In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 137 n.4 (E.D.N.Y. 2013) (noting a smartphone is "a mobile phone capable of running general-purpose computer applications").

In addition, the use of a camera to capture a barcode in Walgreens' claims constitutes the "collection and organization of data," a type of activity that courts have routinely held to be "insufficient" to make an abstract idea patent-eligible.  *CyberSource*, 654 F.3d at 1370; *see, e.g.*, *Alice*, 134 S. Ct. at 2359.  The addition to Walgreens' claims of data-gathering steps and hardware "cannot make an otherwise nonstatutory claim statutory" as a matter of law, and are an insufficient basis on which to find a patent claim is directed to "significantly more" than an abstract idea.  *CyberSource*, 654 F.3d at 1370; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, Nos. 12-2501 (MAS) (JTB), 12-6960, 2013 WL 3964909, at *14 (D.N.J. July 31, 2013).  Thus, obtaining the prescription number from a barcode "does not provide any meaningful limitation" on the underlying abstract idea.  *Content Extraction*, 2013 WL 3964909, at *14 (use of scanner to obtain information from hard copy documents does not render a claim patent-eligible); *see Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1343 (Fed. Cir. 2013) (finding claim limitation of decomposing data into different levels to allow easy use of the data to be "insignificant activity"); *CyberSource*, 654 F.3d at 1370 (holding that the use of the Internet to obtain transaction data failed to make an abstract idea into a patent-eligible concept).

### 3.    The Steps of Walgreens' Method Do Not "Transform" the Claims into "Significantly More" Than the Abstract Idea

Beyond the hardware limitations, the remaining limitations of Walgreens' claims also fail to "transform" the claims so that they involve "significantly more" than an abstract idea and are patent-eligible.  For example, although the claims require the online submission of the prescription number from the mobile device to a remote computer server, that is performed using well-established network communication protocols; Walgreens does not purport to have advanced the state of the art in network or wireless communications technology.  *See generally* '530 patent, col. 4–16.  Indeed, the patent recognizes as prior art the use of "internet-based interfaces (*i.e.*, web sites) through which a patient could request a refill," and Defendants here used such web-based systems well before the priority date of the patent.  '530 patent, col. 1 ll. 38–40.

Likewise, the additional claim limitations directed to particular workflow steps and user interface elements are simply "teased-out version[s]" of the basic idea of refilling a prescription, as applied by a web-enabled device (*i.e.*, a smartphone):  opening the application, selecting the prescription refill function, obtaining the prescription number, sending the prescription number to the pharmacy, reviewing the order, and confirming the pick-up time and location.  *Gametek LLC v. Zynga, Inc.*, Nos. CV 13-2546 RS, CV-13-3089-RS, CV-13-3493-RS, 2014 WL 1665090, at *5 (N.D. Cal. Apr. 25, 2014).  The dependent claims, similarly, do nothing more than elaborate upon different aspects of the same basic steps, for example, locating the prescription number (claims 6–9, 13), contacting a pharmacy to request a refill (claim 19), validating the prescription number provided by the customer (claim 4), providing contact information in case there are issues with the order (claim 11), and revising the default pickup time or location of an order (claims 2–3, 5, 12, 15–18).  None of these embellishments embodies

17

the type of technological advance that makes the claim into "significantly more" than a claim to an abstract idea.  *See Alice*, 134 S. Ct. at 2357–58.

*        *        *

Each and every claim of the '530 patent has at its core the same abstract idea, and none of these claims adds any meaningful additional "inventive concept" either through any one limitation or all the limitations taken together.  At most, the claims "link[] the use of the [idea] to a particular technological environment, that is, implementation via computers."  *Alice*, 134 S. Ct. at 2360 (citation omitted).  But because the added technology is not new, and the specific claim limitations are merely conventional steps and components, those limitations fail to add anything to the general concept of requesting a prescription refill by number that renders the claims patent-eligible.  Accordingly, the claims are invalid.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request judgment on the pleadings in their favor that each claim of the '530 patent is invalid as claiming unpatentable subject matter.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

*For Defendant CVS Pharmacy, Inc.:*

Adam L. Perlman
David M. Krinsky
Cadence A. Mertz
Joelle S. Perry
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant CVS Pharmacy, Inc.,*
*Rite Aid Corporation and Rite Aid Hdqtrs.*
*Corp.*

SEITZ ROSS ARONSTAM & MORITZ LLP

*/s/ Benjamin J. Schladweiler*

OF COUNSEL:

Jeremy A. Younkin
Claire Laporte
Nathan G. Ingham
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA  02110-2600
(617) 832-1000

October 31, 2014

_____
Collins J. Seitz, Jr. (#2237)
Benjamin J. Schladweiler (#4601)
100 South West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzross.com
*Attorneys for ShopKo Stores Operating Co.*
*LLC and mscripts, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 31, 2014, upon the following in the manner indicated:

Anne Shea Gaza, Esquire                           *VIA ELECTRONIC MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Timothy J. Malloy, Esquire                        *VIA ELECTRONIC MAIL*
Scott P. McBride, Esquire
Wilhelm L. Rao, Esquire
Michael J. Carrozza, Esquire
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
*Attorneys for Plaintiff*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)